UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MARILYN WALTON,                      )
                                     )
            Plaintiff                )
                                     )
        v.                           )    Case No. 2:07 cv 331
                                     )
U.S. STEEL; UNITED STATES STEEL)
CORPORATION,                         )
                                     )
            Defendants               )


OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment [DE 49] filed by the defendant, United States Steel
Corporation, on September 30, 2009. For the following reasons,
the motion is GRANTED IN PART and DENIED IN PART.

Background

The plaintiff, Marilyn Walton, an African American women,
was hired at the United States Steel Gary Works plant on August
30, 2004. At the time Walton applied, she stated that she wanted
an entry-level position and did not identify a specific depart-
ment to which she preferred to be assigned. Two African American
women in the Employee Relations Department, Linda Woods and Marie
Flournoy, were responsible for hiring employees and assigning
them to their positions. Woods and Flournoy assigned positions
according to where there was an opening in the mill. When a
position became available, they selected the qualified candidate

whose application was filed in their computer system for the longest time and offered an interview.  If the candidate was selected, the candidate was assigned to the position.  Under this system, Walton was assigned to the coke plant on the east side of USS, and a white woman hired at the same time was assigned to the west side.  From 2005 to 2010, of the 30 African American women hired, 12 were assigned to the east of the mill and 18 to the west side.

During her training, Walton spent time on the west side of the plant and observed that the majority of female employees on the west side of the plant were white, while the majority of female employees on the east side were African American.  The west side of the plant had a cafeteria for the employees, gener-ally had higher incentive pay, and according to Walton, was cleaner than the east side.  However, during economic down turns, the west side was more susceptible to lay offs.  Walton also claims that employees in the coke plant were locked into the plant until the end of their shift, while those on the west side were not.  Walton complained of these disparities and others throughout her employment at USS.

The differences between the two plants were due in part to the separate unions that represented the employees on the east and west sides of the plant.  Local 1066 represented laborers on

the west side of the plant, and Local 1014 represented Walton and other employees on the east side.  Under both bargaining agreements, all entry level employees were given the same base pay. The incentive pay was based on production, and Walton concedes that the rate of incentive pay was not the result of discriminatory practices.  Local 1066 negotiated the cafeteria on the west side of the plant, and although Local 1014 made a similar agreement with USS, the cafeteria on the east side was not self-sufficient and closed.  Furthermore, due to the high turnover rates in the coke plant, Local 1014 agreed to require workers to sign a six year commitment that they would not transfer out of the coke plant.

While Walton was employed in the coke plant, she experienced many altercations with her managers and other employees.  Her first manager, Dee Ellison, sent Walton home early because she was tired of looking at her, almost hit Walton when backing up a machine, and left a pusher ram in Walton's path.  After Walton complained about these incidents, she was assigned to a different crew.  Although Walton had a different supervisor, she still had to see Ellison when their shifts overlapped.

Walton also complained that her new supervisor, Raul Arana, violated rules that compromised her safety.  In particular, she claims that he left her in the dark next to an unbuckled train

car for 40 minutes. Arana also denied Walton training, but he encouraged another worker who had missed training twice before. Arana allowed other workers in the crew to make insulting comments to Walton and took the other employees out for drinks. Walton's co-workers harassed her, called her names, and allegedly made threats against her. However, none of the remarks Walton cites involved racial slurs or had racial overtones, and much of the harassment was done by other African Americans. When Walton tried to eat lunch on the third floor to avoid the harassment, a white co-worker told her that she could not eat there. The only evidence Walton produced of these incidents was her affidavit.

Walton's doctor advised her to transfer because the conditions in the coke plant were too stressful. Walton filed a grievance to transfer to another location in the plant, and while she was out on sick leave, Local 1014 negotiated with USS for her transfer. Before negotiations were completed, Walton received medical clearance to return to work. In light of this, Local 1014 regarded her grievance as moot and ceased negotiations. Walton did not file another grievance to transfer facilities.

These incidents propelled Walton to file a charge of discrimination with the Equal Employment Opportunity Commission. The EEOC investigated, did not find reasonable cause to believe there was discrimination, and issued Walton a right to sue

letter.  Seven and a half weeks after Walton filed her charge of
discrimination with the EEOC, she was terminated for saying
"nigger" to another employee.  Such language was prohibited by
the employee handbook.  Walton had received a copy of the hand-
book.  Walton filed a second complaint with the EEOC, arguing
that her discharge was in retaliation for her first complaint
filed with the EEOC.  Walton further claims that other employees
used the words "nigger" and "nigga" and were not discharged, that
these words are terms of endearment between African Americans,
and that she was not calling her co-worker a nigger, but was
discussing why African Americans should not call each other by
this term.  USS's investigation revealed that Walton used this
language in a derogatory context.  The EEOC issued Walton a right
to sue letter, and she filed this action on September 21, 2007,
claiming USS violated Title VII, 42 U.S.C. §1981, the collective
bargaining agreement, and the Fair Labor Standards Act.  USS now
moves for summary judgment on these issues.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary
judgment is proper only if it is demonstrated that "there is no
genuine issue as to any material fact and the moving party is
entitled to a judgment as a matter of law."  Celotex Corp. v.
Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986); Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009).

The burden is upon the moving party to establish that no material

facts are in genuine dispute, and any doubt as to the existence

of a genuine issue must be resolved against the moving party.

Adickes v. S.H. Kress & Company, 398 U.S. 144, 160, 90 S.Ct.

1598, 1610, 26 L.Ed.2d 142, 155 (1970); Stephens, 569 F.3d at

786.  A fact is material if it is outcome determinative under

applicable law.  There must be evidence on which the jury could

reasonably find for the nonmoving party.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

202, 212 (1986); Stephens, 569 F.3d at 786; Wheeler v. Lawson,

539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of

claims in which issues of intent, good faith, and other subjec-

tive feelings play dominant roles.  Ashman v. Barrows, 438 F.3d

781, 784 (7th Cir. 2006).  Upon review, the court does not evalu-

ate the weight of the evidence, judge the credibility of wit-

nesses, or determine the ultimate truth of the matter; rather,

the court will determine whether there exists a genuine issue of

triable fact.  Wheeler, 539 F.3d at 634 (citing Anderson, 477

U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court

must determine whether the evidence presented by the party

6

opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> Anderson, 477 U.S. at 250, 106 S.Ct. at 2511

See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. at 2553; Stephens, 569 F.3d at 786; Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); Springer v. Durflinger, 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

USS moves for summary judgment, arguing that Walton cannot establish a prima facie case that she was subject to a hostile

work environment in violation of Title VII, cannot establish a prima facie case that she was retaliated against under Title VII and 42 U.S.C. §1981, did not exhaust her administrative remedies prior to filing her claim for breach of the collective bargaining agreement, and did not exhaust her administrative remedies under the Fair Labor Standards Act.

Title VII of the Civil Rights Act prohibits discrimination in employment because of an individual's race. 42 U.S.C. §2000e-2(a)(1). Section 1981 provides that:

> All persons within the jurisdiction of the
> United States shall have the same right in
> every State . . . to make and enforce con-
> tracts . . . as is enjoyed by white citizens
> [and this right includes] the making, perfor-
> mance, modification, and termination of con-
> tracts, and the enjoyment of all benefits,
> privileges, terms, and conditions of the
> contractual relationship.
>
> 42 U.S.C. §1981(a)-(b), as amended by the
> Civil Rights Act of 1991

Title VII and Section 1981 claims require an equivalent analysis. See Williams v. Waste Management of Illinois, Inc., 361 F.3d 1021, 1028 (7th Cir. 2004); Cerutti v. BASF Corporation, 349 F.3d 1055, 1060 n.4 (7th Cir. 2003); Walker v. Abbott Labora-tories, 340 F.3d 471, 474 (7th Cir. 2003) (noting that Title VII and Section 1981 cases have similar liability standards but different available remedies). Motions for summary judgment in employment discrimination cases are treated like any other motion

8

for summary judgment.  Alexander v. Wisconsin Department of
Health and Family Services, 263 F.3d 673, 681 (7th Cir. 2001);
Wohl v. Spectrum Manufacturing, Inc., 94 F.3d 353, 355 n.1 (7th
Cir. 1996).

In a Title VII and Section 1981 case, a plaintiff can prove
discrimination by direct evidence of discriminatory intent or,
where no direct evidence exists, by using the indirect-burden
shifting method established in McDonnell Douglas Corporation v.
Green, 411 U.S. 792, 802-805, 93 S.Ct. 1817, 1824-1825, 36
L.Ed.2d 668 (1973), and refined in Texas Department of Community
Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1092, 67
L.Ed.2d 207 (1981); Williams, 361 F.3d at 1034; Dandy v. United
Parcel Service, Inc., 388 F.3d 263, 272 (7th Cir. 2004).  Under
the direct method, the plaintiff "must show either 'an acknowl-
edgment of discriminatory intent by the defendant or circumstan-
tial evidence that provides the basis for an inference of inten-
tional discrimination.'".  See Dandy, 388 F.3d at 272 (quoting
Gorence v. Eagle Food Centers, 242 F.3d 759, 762 (7th Cir.
2001)); Rhodes v. Illinois Department of Transportation, 359 F.3d
498, 504 (7th Cir. 2004); Adams v. Wal-Mart Stores, Inc., 324
F.3d 935, 938-39 (7th Cir. 2003).  Circumstantial evidence, by
contrast, must create a "convincing mosaic" that "allows the jury
to infer intentional discrimination by the decision maker" and

9

points directly to a discriminatory reason for the employment decision.  Rhodes, 359 F.3d at 504 (quoting Troupe v. May Department Stores Company, 20 F.3d 734, 737 (7th Cir. 1994)); Adams, 324 F.3d at 939.

The most general statement of the McDonnell Douglas method of proof is that the plaintiff has the initial burden of showing: 1) she belongs to a protected group; 2) she was performing to the employer's legitimate expectations; 3) she suffered an adverse employment decision; and 4) the employer treated similarly situated employees who are not in the protected group more favorably. Davis v. Con-Way Transportation Central Express, Inc., 368 F.3d 776, 788 (7th Cir. 2004); Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir. 2002).  This framework is flexible and may be adapted to fit each case.  Burdine, 450 U.S. at 253 n.6, 101 S.Ct. at 1094 n.6; Wohl, 93 F.3d at 359.

Once the plaintiff has met this initial burden, the burden shifts to the defendant who must "articulate a legitimate, non-discriminatory reason for its actions." Herron v. Daimler-Chrysler Corporation, 388 F.3d 293, 299 (7th Cir. 2004); Johnson v. Cambridge Industries, Inc., 325 F.3d 892, 897 (7th Cir. 2003). The defendant's burden is not one of persuasion, but rather of production and "can involve no credibility assessment."  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509, 113 S.Ct. 2742,

2748, 125 L.Ed.2d 407 (1993). See also Reeves, 530 U.S. at 142, 120 S.Ct. at 2106.

The burden then shifts back onto the plaintiff to show by a preponderance of the evidence that the reason given by the defendant is just a pretext for discrimination. See Jordan v. City of Gary, 396 F.3d 825, 834 (7th Cir. 2005) Volvosek v. Wisconsin Department of Agriculture, Trade and Consumer Protection, 344 F.3d 680, 692 (7th Cir. 2003); Peters v. Renaissance Hotel Operating Company, 307 F.3d 535, 545 (7th Cir. 2002). The plaintiff cannot establish pretext merely by showing that the "reason was doubtful or mistaken." Crim v. Board of Education of Cairo School District No. 1, 147 F.3d 535, 541 (7th Cir. 1998). See also Rummery v. Illinois Bell Telephone Company, 250 F.3d 553, 557 (7th Cir. 2001). Rather, the plaintiff must show that the employer is lying or that the employer's reasoning has no basis in fact. Lesch v. Crown Cork & Seal Company, 282 F.3d 467, 473 (7th Cir. 2002). See also Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 574-576 (7th Cir. 2003). The trier of fact still may consider the evidence establishing a plaintiff's prima facie case, and inferences properly drawn therefrom, on the issue of whether a defendant's explanation is pretextual. Reeves, 530 U.S. at 143, 120 S.Ct. at 2106.

Despite the shifting burden of production, the ultimate burden of persuasion remains at all times with the plaintiff. St. Mary's Honor Center, 509 U.S. at 507, 113 S.Ct. at 2747; Burdine, 450 U.S. at 254, 101 S.Ct. at 1094; Johnson, 325 F.3d at 897. A plaintiff alleging discrimination, however, has a lesser burden when proceeding on a summary judgment motion. In Anderson v. Baxter Healthcare Corp., 13 F.3d 1120 (7th Cir. 1994), the Seventh Circuit stated:

> Both McDonnell Douglas and [St. Mary's Honor Center v. Hicks, 509 U.S. at 507, 113 S.Ct. at 2747] speak to the burden the plaintiff bears at trial. However, for summary judgment purposes, the nonmoving party, in this case the plaintiff, has a lesser burden. He must only "produce evidence from which a rational fact-finder could infer that the company lied" about its proffered reasons for dismissal.
>
> 13 F.3d at 1124 (quoting Shager v. Upjohn, 913 F.2d 398, 401 (7th Cir. 1994))

See also O'Neal v. City of New Albany, 293 F.3d 998, 1005 (7th Cir. 2002); Alexander, 263 F.3d at 683 (stating that evidence that calls into question the truthfulness of the employer precludes summary judgment). If the plaintiff is unable to meet her burden, her claims must fail.

To support a hostile work environment claim, the plaintiff must establish that: "(1) [s]he was subjected to unwelcome harassment, (2) the harassment was based on [her] race, (3) the

harassment was severe and pervasive enough to alter the condi-
tions of [her] environment and create a hostile and abusive
working environment, and (4) there is a basis for employer
liability." Beamon v. Marshall & Ilsley Trust Co., 411 F.3d 854,
863 (7th Cir. 2005)(citing Luckie v. Ameritech Corp., 389 F.3d
708, 713 (7th Cir. 2004)). Under the second prong, the alleged
harassment must be "sufficiently connected to race" before it
reasonably may be construed as being motivated by the defendant's
hostility to the plaintiff's race. Beamon, 411 F.3d at 863-64
(citing Luckie, 389 F.3d at 713 ("The conduct at issue must have
a racial character or purpose to support a hostile work environ-
ment claim")); Shanoff v. Ill. Dep't of Human Serv., 258 F.3d
696, 704 (7th Cir. 2001). To show a sufficient connection, the
harassment must be inherently racial or bear racial overtones.
Beamon, 411 F.3d at 863-64; Hoosier Ins. Co. v. Audiology Founda-
tion of America, 167 F.3d 340, 346 (7th Cir. 1999).

Although the evidence Walton submitted shows that she was
harassed by management and co-workers, the record is devoid of
any evidence that indicates this treatment was due in part to her
race. Walton was not subject to racial slurs or epithets, and
there is nothing inherently racial about co-workers and manage-
ment violating safety rules, calling her names that were not
racially motivated, or making threats against her, particularly

because other African Americans were the source of the alleged harassment.  There is no indication that the company had negative attitudes towards African-Americans or that the statements directed to Walton had racial overtones.  Beamon, 411 F.3d at 863.  "While it is true that harassment need not be explicitly racial in order to be probative of a hostile environment, . . . it is equally true that not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority."  Beamon, 411 F.3d at 863.  Walton has not shown that race hostility was the impetus of the harassment, and the events she has described just as easily could have been directed to someone of another race.  Absent this proof, summary judgment must be GRANTED in favor of USS on the issue of racial harassment creating a hostile work environment.

Walton's next claim was for disparate treatment under Title VII and 42 U.S.C. §1981.  As a preliminary matter, USS argues that Walton's claim for disparate treatment is time barred under Title VII.  Title 42 U.S.C. §2003-5(e)(1) provides that a charge of discrimination must be filed within 300 days of the discriminatory employment practice in states that have a state agency authorized to mandate relief when a violation is found, or within 180 days otherwise.  An unlawful practice is said to have occur-

14

red on the date of the discrete act that caused the loss that led to the party filing a charge with the EEOC. National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 110-11, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Although Walton's complaint was not filed within 300 days of her assignment to the coke plant, this is immaterial because USS concedes that Walton's §1981 claim is not time barred, and the same analysis applies under both theories. See Fane v. Locke Reynolds, LLP, 480 F.3d 534, 538 (7th Cir. 2007)("Whether Fane exhausted her Title VII claims is immaterial, however, because Fane also sued under §1981").

Disparate treatment in assigning jobs in a racially discriminatory manner can be proven through direct or circumstantial evidence, or by the indirect burden shifting method established in McDonnell-Douglas. No reliable direct evidence has been submitted which includes any acknowledgment or a discriminatory intent by USS to support a finding under the direct method of proof. Likewise, Walton has not provided reliable circumstantial evidence which could provide even the thinnest thread of an inference of discriminatory intent. After sifting through Walton's Response and the exhibits submitted to support the alleged facts and disputes, the only testimony cited which asserts discriminatory intent is pure supposition by Walton. Her intuition, without any racial epitaphs, anecdotes of disparate treatment, or

15

derogatory statements of any kind relating to race, is not enough to provide even the barest circumstantial evidence of discriminatory intent and cannot be inferred to point directly to a discriminatory reason for an employment decision.

Under the indirect method, the analysis begins with whether Walton is a member of a protected class. Walton, an African American woman, satisfies this first element of the prima facie case for discrimination under §1981. Next, Walton must show that she was performing at the legitimate expectations of USS. The record does not reflect that Walton performed below USS's expectations prior to the time she was discharged.

The dispute arises at the third prong where Walton must show that she suffered an adverse employment decision. Discrimination is prohibited in the "terms, conditions, or privileges of employment." 42 U.S.C. §2000e-2. This provision is broadly read to encompass job duties, titles, and other conditions that cause an economic injury or affect the psychological state of the employees. See Rogers v. E.E.O.C., 454 F.2d 234 (5th Cir. 1971) (disapproved of on other grounds by, E.E.O.C. v. Shell Oil Co., 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984)). Title VII only protects an employee from practices that produce an injury and "does not protect an employee from trivial harms, petty slights, nor minor annoyances." Stephens, 569 F.3d at 790. The court

determines whether an injury occurred under an objective test, taking into consideration the particular circumstances of each particular case. Stephens, 569 F.3d at 790. Under this standard, assigning jobs in a discriminatory fashion may be an adverse employment action when the claimant can show a significant quantitative or qualitative disadvantage in the terms or conditions of her employment from others not in the protected class. See Johnson, 325 F.3d at 901 (stating that denial of a lateral transfer is not an adverse employment action); Stephens, 569 F.3d at 790.

Under the circumstances of this case, Walton failed to establish that her assignment to the coke plant was an adverse action. The only evidence Walton offers in support of her position is the difference in pay, the difference in the cleanliness of the two facilities, and the cafeteria located on the west side of the plant.

All employees assigned to entry level positions earned the same base pay, regardless of which side of the plant they were assigned. Walton concedes that incentive pay is based on a non-discriminatory formula calculated according to the production levels of each plant. Although Walton argues that the employees on the west side receive higher incentive pay on average, employees in the coke plant are less susceptible to lay-offs during

economic down turns. For this reason, it may be in the long term benefit for employees to be assigned to the coke plant, and the coke plant may be preferred.

The incentive pay fluctuates within each plant in accordance with the production levels to compensate employees for the amount of work they perform. Walton was not being compensated less for performing the same amount of work, rather those receiving higher incentive pay performed at greater rates. See Wil's Indus. Services, Inc. v. U.S. Steel Corp, 2009 WL 2169663 (N.D. Ind. July 17, 2009)(refusing to find an adverse employment action where the evidence suggested that the difference in pay correlated to the amount of work performed). There are differences in job assignments in any facility, and this alone does not constitute an adverse employment action. See e.g., Fane, 480 F.3d at 539 ("Harder work assignments do not constitute adverse employment action, and thus cannot support disparate-treatment claim"). Previous cases have resolved disputes over employees being subject to harsher assignments and longer hours. Fane, 480 F.3d at 539; Stephens, 569 F.3d at 790-91 (absent proof of a substantial change in employee's responsibilities, reassignment is not actionable) (citing Nagle v. Village of Calumet Park, 554 F.3d 1106, 1119-20 (7th Cir. 2009); Lapka v. Chertoff, 517 F.3d 974, 986 (7th Cir. 2008); Grube v. Lau Indus., Inc., 257 F.3d 723, 728

(7th Cir. 2001)).  For this reason, it may be a subjective pre-

ference whether one prefers shorter hours and a base pay or

longer hours, harder work assignments, and incentive pay.  The

relevant inquiry is whether the employees in both the east and

west plants were treated the same under all of the circumstances.

This is answered in the affirmative because USS hired the employ-

ees under the same non-discriminatory method and paid them

according to the same formula based on the amount of work re-

quired from them.  The incentive pay was not guaranteed to

employees in either facility and fluctuated with demand.  There-

fore, it cannot be said that it was adverse to assign an employee

to one plant and not the other when unexpected changes in the

economy could shift the plant preference.

Although USS concedes that the west side was cleaner and

had a cafeteria, these are insignificant differences that were

the result of the nature of the facilities and their independent

collective bargaining agreements and do not give rise to a cause

of action for retaliation.  See Stephens, 569 F.3d at 790 (stat-

ing that the recognizable differences must be significant to give

rise to a cause of action).  In any facility there are differ-

ences between positions, and absent proof that Walton was treated

significantly different from other employees when she was as-

signed to the coke plant, or that USS's explanations are a

pretext for discriminatory practices, USS did not take an adverse employment action against Walton.

Even if Walton suffered an adverse employment action, her claim fails under the fourth prong, which requires proof that she was treated less favorably than other similarly situated employees not in the protected class. Employees were assigned to positions in the same manner and were paid according to the same formula in accordance with how much work they were required to perform. Because under these systems the employees were treated equally and Walton has not shown any disparity in how racial minorities were treated, she has failed to satisfy the fourth prong. Therefore, no genuine issue of material fact remains under her claim for disparate treatment in being assigned to the coke plant.

Walton also has complained of retaliation under Title VII. Unlawful retaliation in violation of Title VII occurs "when an employer takes actions that discriminate against an employee because she has opposed a practice that Title VII forbids." Kampmier v. Emeritus Corp, 472 F.3d 930, 939 (7th Cir. 2007) (internal quotations omitted) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59, 126 S.Ct. 2405, 2410, 165 L.Ed.2d 345 (2006)). To present a prima facie case for discriminatory retaliation, Walton must prove that "(1) she engaged in

statutorily protected expression; (2) she suffered an adverse
employment action; and (3) there was a causal link between the
protected expression and the adverse action." Culver v. Gorman &
Company, 416 F.3d 540, 545 (7th Cir. 2005); Moser v. Indiana
Department of Corrections, 406 F.3d 895, 903 (7th Cir. 2005). The
only element of the prima facie case the parties dispute is
whether there is a causal link between Walton filing her EEOC
complaint and her termination seven and a half weeks later.

Just as with other discrimination claims, the direct method
of proof in a retaliation claim "can be supported with direct or
with circumstantial evidence." Culver, 416 F.3d at 545. Direct
evidence essentially requires an outright admission by the
decision-maker that he based his decision on a discriminatory
animus. See Culver, 416 F.3d at 545; Blise v. Antaramian, 409
F.3d 861, 866 (7th Cir. 2005); Jordan, 396 F.3d at 832.  Walton
does not rely on direct evidence relating to her EEOC complaint,
but rather relies on circumstantial evidence to show retaliation
under the direct method of proof.

A "convincing mosaic" of circumstantial evidence from which
the trier of fact could infer intentional discrimination will
directly prove the plaintiff's prima facie case. See Culver, 416
F.3d at 545-46; Jordan, 396 F.3d at 832. However, the circumstan-
tial evidence "must point directly to a discriminatory reason for

21

the employer's action." Jordan, 396 F.3d at 832. According to the
Seventh Circuit, "mere temporal proximity between the filing of
the charge of discrimination and the action alleged to have been
taken in retaliation for that filing will rarely be sufficient to
create a triable issue" under the direct method of proof. See
Stone v. City of Indianapolis Public Utilities Division, 281 F.3d
640, 644 (7th Cir. 2002) (emphasis added). However, suspicious
timing coupled with selective enforcement of work rules is enough
to directly establish a prima facie case of retaliation. See
Culver, 416 F.3d at 546-47; Lang v. Illinois Department of
Children and Family Services, 361 F.3d 416, 420 (7th Cir. 2003);
Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982).

Within seven and a half weeks of filing her complaint with
the EEOC for race discrimination, Walton was discharged from her
position for saying the word "nigger" to another employee.  Al-
though it is a violation of USS's company policy to direct dero-
gatory racial epithets towards another employee, the record
suggests that other employees said the words "nigger" and "nigga"
without facing adverse consequences and that USS allowed the
employees to play music that contained these terms in the lyrics.
For this reason, discharging an employee with an otherwise clean
disciplinary record for saying "nigger" appears to be a harsh
punishment and raises an inference of retaliation.  This is

particularly true if Walton said "nigger" in the context she explains, by discussing whether African Americans should use this term as one of endearment. Although there is conflicting evidence of the context in which Walton used this term, credibility determinations must be left for the trier of fact. Given the coincidental timing of Walton's discharge and the evidence that others used these terms without repercussions, there remains a triable inference of unlawful retaliation.

Walton next claims that USS breached the collective bargaining agreement by failing to transfer her out of the coke plant after her doctor instructed that it was too stressful for her to work there. Walton's claim is governed by the Labor Management Relations Act, 29 U.S.C. §185. See International Union of Operating Engineers, Local 150 AFL CIO v. Hobart Crane Rental, Inc., 2007 WL 2114284 (N.D. Ind. July 19, 2007)(stating that 29 U.S.C. §185 provides federal courts with jurisdiction over contract disputes between an employer and labor organization). As a prerequisite to filing a complaint in federal court, the LRMA requires parties to exhaust their administrative remedies by following the formal grievance procedures in their contract unless doing so would be futile. Republic Steel Corp. v. Maddox, 379 U.S. 650, 653, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Futility is shown when the union breaches its duty of fair representation

of the plaintiff's grievances.  See Vaca v. Sipes, 386 U.S. 171,
184-85, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).  If the employee
reasonably believes that following the formal grievance procedure
would be futile, she is granted six months after the event giving
rise to her claim to file a complaint with the proper court.  29
U.S.C. §160(b); DelCostello v. International Brotherhood of
Teamsters, 462 U.S. 151, 154 n.2, 103 S.Ct. 2281, 76 L.Ed.2d 476
(1983).

Walton filed a grievance to be transferred out of the coke
plant pursuant to the advice of her doctor.  While she was out on
a sick leave, Local 1014, Walton's union, negotiated with USS to
transfer Walton to another area of the mill.  In July 2006,
before negotiations were complete, Walton was given medical
clearance to return to work.  In light of her medical clearance,
Walton's grievance was rendered moot and negotiations ceased.
Walton did not file another grievance prior to filing her com-
plaint on September 21, 2007.

When Local 1014 was notified that Walton received medical
clearance, it had no reason to believe that Walton had a continu-
ing grievance to request a transfer.  If Walton had a continuing
or different reason for transferring facilities, she was required
to file a new grievance with her union stating these reasons.
However, Walton did not file a new grievance and, therefore, did

not exhaust her administrative remedies.  If Walton had shown that such attempts would be futile, which she did not, her complaint still was filed outside the six month statute of limitations.  Accordingly, summary judgment is GRANTED in favor of USS on this issue.

Finally, USS claims that Walton's complaint of retaliation under the Fair Labor Standards Act, 29 U.S.C. §255, is barred by the two year statute of limitations.  Walton was discharged on January 3, 2007, and did not plead this charge in her original complaint.  On December 30, 2008, within the two year statute of limitations, Walton moved to amend her complaint and was granted leave on February 2, 2009.  Walton attached her amended complaint as an exhibit to her motion, and pursuant to the court order filed it as a separate docket entry on February 17, 2010.  The amended complaint was in front of the court since the date she filed her motion to amend, and is considered timely filed within the statute of limitations.

Moving to the merits of this claim, the relevant section of the FLSA provides that it is unlawful

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to

> serve on an industry committee. (emphasis
> added)

> 29 U.S.C. §215(a)(3)

To succeed, the plaintiff must prove that she engaged in conduct
that is statutorily protected under the Act, she suffered an
adverse employment action, and a causal link exists between the
plaintiff's conduct and the employment action. The FLSA protects
employees who make complaints concerning wages, overtime pay, and
working hours. Its protection is limited to employees who make
formal complaints, and does not extend to those who only make
oral complaints to their supervisors. Kasten v. Saint-Gobain
Performance Plastics Corp., 570 F.3d 834 (7th Cir. 2009); Lambert
v. Genesee Hosp., 10 F.3d 46 (2nd Cir. 1993).

The only part of Walton's EEOC complaint pertaining to wages
states: "I have noticed White females the company has hired are
offered better paying jobs than Black females." (Deft. Exh. 1)
Walton's complaint is for discrimination and does not complain
about overtime issues, the pay scale, or the hours she was
required to work. Rather, it complains about the manner in which
USS offered jobs to its employees. The only complaints that
might rise to a cause of action under the FLSA were Walton's
verbal complaints to her supervisors that she was not being paid
for the full amount of time she worked, including changing and

prep time.  However, her verbal complaints were insufficient to give rise to a claim under the retaliation provision of the FLSA. Therefore, summary judgment is GRANTED in favor of USS on this claim.

---

Based on the foregoing the Motion for Summary Judgment [DE 49] filed by the defendant, United States Steel Corporation, on September 30, 2009, is GRANTED IN PART and DENIED IN PART.  The only remaining issue is Walton's complaint for retaliatory dis-charge.

ENTERED this 7th day of December, 2010

s/ Andrew P. Rodovich
United States Magistrate Judge